Russell J. Schafer v. Commissioner.
Schafer v. Commissioner
Docket No. 7581.
United States Tax Court
1947 Tax Ct. Memo LEXIS 244; 6 T.C.M. (CCH) 393; T.C.M. (RIA) 47087; April 17, 1947
Edward S. Clark, Jr., Esq., 215 Shearer Bldg., Bay City, Mich., for the petitioner. Frank M. Cavanaugh, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $1,495.73 in the petitioner's income tax for the year 1941. The only error assigned is the failure of the Commissioner to recognize the existence of a partnership between the petitioner and his wife. Findings of Fact The petitioner is an individual who filed his separate return for 1941 with the collector of internal revenue at Detroit, Michigan. He and his wife have one child. The petitioner and his wife, Eloise, were married in 1922. Eloise had been teaching school and she continued to do so for about three *245 years after she was married. Her salary was $100 per month for the school term of nine months. Eloise had $2,250 when they were married. The couple contracted to buy a house for $4,000. Eloise made a down payment of $1,000 from her separate funds. The petitioner received a salary of $90 per month. They pooled their earnings and paid from that source their living expenses, the payments on the house, and the cost of furnishings for the house. The petitioner and Eloise, together with Karl and Helen Bublitz, in 1928 bought all of the stock of a corporation operating a garage. The purchase price was $16,000, of which the petitioner and Eloise paid $8,000 which they borrowed - $3,700 on their house, $1,000 on some vacant lots, and the balance secured by the purchased stock. Twenty-five shares of stock were issued to each of the four persons. The mortgage on the house was paid, except for $100, by the sale of the house in 1931. The lots were sold also. The balance of the amounts borrowed was paid almost entirely from earnings from the business. The books of account indicate that Bublitz and the petitioner withdrew substantial sums, but the record in this case does not show whether or *246 not any dividends were ever paid by the corporation. The corporation was dissolved in 1936. Thereafter the business was continued under some kind of an arrangement not disclosed by this record. There was no written agreement of partnership entered into by any of the four persons who had been stockholders of the corporation at its dissolution. Books were opened at some time not disclosed by this record but after the dissolution of the corporation. They include an investment account in the name of each of the four persons. The first entry in each is a credit of $4,048.88 dated December 31, 1937. The entries in the account in the name of Eloise are as follows: Date
Description
Debits
Credits
Balance
1937
Dec. 31
4,048.88
4,048.88
1938
Dec. 31
From Profit & Loss
820.11
4,868.99
Dec. 31
From Drawing
1,190.27
3,678.72
Dec. 31
Adjustment as per Schedule
59.30
3,738.02
Aug. 31
Adjustment as per Schedule
118.52
3,619.50
31
Close P & L into Investment
224.63
3,844.13
31
Reverse entry chg RJS
59.30
3,784.83
31
Reverse entry closing Drawing a/c
1,187.45
4,972.28
31
Reverse entry closing Drawing a/c
1,190.27
6,162.55
31
Adjust Inv. a/c Calif. Inn
1,097.95
7,260.50
31
Transfer E. Schafer to R. J. Schafer
7,260.50
0
*247 The account of Helen Bublitz, then deceased, showed a credit of $7,260.50 and that of Karl showed a debit balance of $950.53 as of August 31, 1939. The Helen account was closed by a transfer on that date of $7,260.50 to Karl's account, thus showing a credit balance of $6,309.97 in the latter. That account was closed on the same day by a debit of $6,309.97 opposite the explanation "Transfer Partnership to Proprietorship". Bublitz sold his interest in the business at that time for $6,309.97. He received $1,300 in cash which the petitioner and his wife had saved, $2,700 which they had borrowed on a loan secured by life insurance policies, the nature of which is not shown in this record, and $1,800 which the petitioner borrowed on some stock owned by him. The balance of $509.97 was to be and was paid later by the petitioner. The loan of $2,700 was repaid later out of earnings of the business. Thereafter an account was maintained headed "R. J. Schafer - Investment" and another headed "Eloise Schafer - Investment". The opening entry in the first account was a credit of $7,725.81 and in the other a credit of $7,725.80. The other entries in each account are practically identical. One *248 entry has been made each year in each crediting one-half of the profits of the business and another debiting one-half of the withdrawals. The petitioner has operated and managed the business since 1939. Eloise has taken no part therein. They had no written agreement relating to the ownership or operation of the business at any time material hereto. The record does not show any details of any oral agreement between them. The business consists of a retail Chevrolet sales agency, service and repairs on motor vehicles, and a gasoline and oil service station. The business was carried on under the name "California Garage". Two cars were "carried" in that name at the time of the hearing, one of which Eloise operated for her own use. A bank account was carried in the name "California Garage". The petitioner, Eloise, and an employee of the business have had authority to sign checks and withdraw funds from that account. Eloise has never withdrawn any funds from the business by issuing a check on the account over her own signature. A partnership return showing one-half of the profits distributed to the petitioner and one-half to Eloise was filed for the calendar year 1941, and each reported *249 that amount upon a separate return. The Commissioner, in determining the deficiency, added $6,507.39 to the income reported by the petitioner and explained that the entire income of the California Garage business was taxable to the petitioner under section 22 (a) and none was taxable to Eloise. Opinion MURDOCK, Judge: This business was actually operated by the petitioner, and Eloise took no part and had no voice therein. They were not actually engaged in the business as partners. They had no written partnership agreement. The testimony does not show that they had an oral discussion at any time or just what oral agreement they ever entered into. No time, place, or detail has been proven except a general statement by the petitioner that they considered themselves partners. The following is from his testimony: A. * * * Our marriage made us partners under the laws of God. Q. Your marriage made you partners? A. That is what we figured - yes. That is the way we worked all through life. The petitioner has endeavored to trace money, which originally belonged to Eloise, into the California Garage business. She put $1,000 of her own money into their home in 1922. She testified *250 that she put more than that into the home or the furnishings, or both, but the amount is not shown or even approximated. Money from a mortgage on that property was used in 1928 to buy stock in the corporation which owned the business at that time; the house was later sold to pay off the mortgage; and a part of the ownership in the business of 1941 was derived from that original purchase. Does this chain of events entitle her to one-half of the earnings of the business in 1941? The record does not show what portion of the 1941 earnings is attributable to the use of capital and what portion is attributable to the personal ability and activity of the petitioner. No effort was ever made to fix the value of his services. He withdrew funds from the business as he saw fit. The book record of those withdrawals prior to September 1939 is confused with reversing entries and unexplained adjustments. They were charged annually in equal amounts to the two accounts after August 1939. The record does not show that Eloise ever withdrew any funds from the business or that she ever used any earnings of the business for her own purposes or separate benefit. She only benefited from the petitioner's use *251 of those earnings as any wife might be expected to benefit from the earnings of her husband's business. The record as a whole does not show that the Commissioner erred in taxing all of the income of the business for 1941 to the petitioner who apparently earned most, if not all, of it. Decision will be entered for the respondent.